IN THE IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | DOCKET NO. 3:19-CR-452-X |
| § | |
| BRIAN CARPENTER (1) § | |
| JERRY HAWRYLAK (2) § | |

### DEFENDANTS' JOINT MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29

The Defendants, Dr. Brian Carpenter and Jerry Hawrylak, by and through their counsel of record, hereby submit their Joint Motion for Judgment of Acquittal Pursuant to Federal Rule of Criminal Procedure 29, and in support thereof would respectfully show the Court as follows:

### INTRODUCTION

Here, the Government has failed to present sufficient evidence upon which any rational jury could find even the most basic predicates necessary for the imposition of criminal liability in this case. Namely, the Government has wholly failed to prove that: (1) the Defendants made an agreement to commit health care fraud; (2) that the Defendants were aware of the unlawful purpose any such agreement (had one existed); (3) that either Defendant acted in furtherance of any unlawful agreement (had one existed); or (4) that either Defendant knowingly or willfully to defraud TRICARE. Without sufficient proof to convince a jury of the existence of these necessary findings, none of the charges in the Indictment can be sustained and a judgement of acquittal must be entered.

### APPLICABLE LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) provides in relevant part that "[a]fter the government closes its evidence or after the close of all of the evidence, the court on defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a

conviction." FED. R. CRIM. P. 29(a) (hereafter "Rule 29"). Thus, the key inquiry in assessing a Rule 29 motion is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Rule 29 thus serves as an important safeguard, designed to ensure the fundamental principle of due process "that no person shall be compelled to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

In assessing evidence sufficiency, a court will consider "the countervailing evidence as well as the evidence that supports the verdict." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011); *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999); *United States v. Giraldi*, 86 F.3d 1368, 1371 (5th Cir. 1996). Thus, "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996), citing *United States v. Menesses*, 962 F.2d 420, 427 (5th Cir. 1992)).

1. **Government Has Failed to Prove Any Unlawful Agreement**

Here, in Count One of the Indictment, the Government has charged the Defendants with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347) *See* Indictment, at 7. Critically, a criminal conspiracy is an agreement to join a common scheme to commit an unlawful goal. *See Monsanto Co., v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 754 (1984). In order to establish a violation of conspiracy to commit health care fraud, the Government must prove that: "(1) two or more persons made an agreement to commit health care fraud; (2) that the defendant[s] knew the unlawful purpose of the agreement; and (3) that the defendant[s] joined in

the agreement … with the intent to further the unlawful purpose." *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018). **Without an agreement, there is no conspiracy**. *See United States v. Alvarez*, 610 F.2d 1250, 1253–54 (5th Cir. 1980). Indeed, "[i]n a conspiracy charge, the term 'agreement' is all but synonymous with the conspiracy itself, and as such has great operative force." *United States v. Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 763, 102 L. Ed. 2d 927 (1989). As the United States Supreme Court has explained, "the gist of the crime of conspiracy as defined by the statute is the agreement to commit one or more unlawful acts, from which it follows that the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects." *United States v. Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 763, 102 L. Ed. 2d 927 (1989).

Moreover, conspirators do not enter an agreement by happenstance; each party must have "intended to enter into the agreement and the schemers must have had a common intent to commit an unlawful act." *United States v. Alvarez*, 610 F.2d 1350, 1255 (5th Cir. 1980). To the same end, the Fifth Circuit has repeatedly emphasized that "proof of an agreement to enter into a conspiracy is not to be lightly inferred." *Id.* at 26 As such, it "is essential...that the prosecution show beyond a reasonable doubt that the defendant had the deliberate, knowing, specific intent to join the conspiracy." *United States v. Alvarez*, 610 F.2d 1350, 1257 (5th Cir. 1980) (citing *United States v. Morado*, 454 F.2d 167, 175, (5th Cir. 1972) cert. denied, 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116). "[A]n agreement is a necessary element of conspiracy, and as such, the Government must prove its existence beyond a reasonable doubt." *United States v. Arredondo-Morales*, 624 F.2d 681, 683 (5th Cir. 1980). The Government has utterly failed to do so here.

Rather, despite presenting the testimony of two cooperating alleged co-conspirators, Matt Hawrylak and Britt Hawrylak (who have admitted that they are guilty of the conspiracy alleged in

the Indictment), neither one of those cooperators ever actually indicated that either Brian Carpenter or Jerry Hawrylak were part of any unlawful agreement, were aware of any illegal purpose of any such agreement, or knowingly and intentionally acted to further the unlawful purpose of the conspiracy, *i.e.,* to commit health care fraud. As a result, the Government's evidence falls far short of that necessary for any rational juror to find that either Defendant knew of or joined into any illegal agreement, much less in the conspiracy charged in count one of the Indictment.

In its opening statement, the Government asserted that the evidence would show that an unlawful agreement was entered into at the famed "Del Frisco's meeting" at which Britt Hawrylak, Matt Hawrylak, Mike Ranelle, Jerry Hawrylak, Brian Carpenter, and Stephanie Banda were present. Contrary to that assertion, however, *both* Britt Hawrylak and Matt Hawrylak have testified that Dr. Carpenter refused to participate in any business arrangements proposed at that meeting:

> Q. So that is the pitch that Mike Ranelle was giving in del Frisco's that night, was about an MSO, is that right?
> A. Some of the pitch, yes.
> Q. He wanted you to bring Dr. Carpenter in to this MSO model that he was doing in Rxpress?
> A. That was part of the conversation, yes, sir.
> Q. And Dr. Carpenter refused to do that because he knew -- he didn't believe it was legal for him to get any money?
> A. I believe thats correct.

Exhibit 1, at 939. Notably, Matt Hawrylak testified to the

Moreover, and perhaps even more importantly, there has been no evidence presented as to what the purported unlawful agreement actually was, nor that either Defendant made any effort to join, much less act in furtherance of, such an agreement. Instead, the Government has presented only "mere suspicion, speculation, or conjecture, [and the] overly attenuated piling of inference on inference," which the Fifth Circuit has expressly deemed insufficient. *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996). In sum, as support for the existence of an unlawful agreement

in this case, the Government presented the testimony of its two cooperating alleged coconspirators, Matt and Britt Hawrylak. "Yet neither person (nor anyone else, for that matter) testified that [the Defendants] understood the unlawful or fraudulent purpose behind [Matt and Britt Hawrylak's] practices. Neither testified that [they] had had a conversation with [either Defendant] about avoiding red flags, or the illicitness of [commission] payments." *United States v. Nora*, 988 F.3d 823, 831–32 (5th Cir. 2021).

2. **The Government Has Failed to Prove that Either Defendant Acted with the Requisite Intent,** *i.e.***, Knowingly and Willfully**

To prove the offense of health care fraud, in violation of 18 U.S.C. § 1347, the Government must show that the Defendants knowingly and willfully executed "a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises," any health care benefit program's money in connection with the delivery of or payment for health care services. *United States v. Ganji*, 880 F.3d 760, 777 (5th Cir. 2018); *see also, e.g., United States v. Imo*, 739 F.3d 226, 235–36 (5th Cir. 2014); 18 U.S.C. § 1347(a). Notably, "each substantive count requires the government prove the submission or attempted submission of a separate fraudulent claim, since the health care fraud statute, § 1347, punishes executions or attempted executions of schemes to defraud, and not simply acts in furtherance of the scheme." *United States v. Martinez*, 921 F.3d 452, 472 (5th Cir. 2019) (citing *United States v. Hickman*, 331 F.3d 439, 446 (5th Cir. 2003)). Here, the Government has fallen woefully short of its duty to establish, beyond a reasonable doubt, that the Defendants "knowingly and willfully" executed or attempted to execute any scheme to defraud TRICARE, as alleged in the Indictment.

Although the precise meaning of the term "willfully" can vary depending on the context, *id.* at 191, 118 S.Ct. 1939, this court has held that the general understanding of the term applies to

its use in the general health care fraud statute and the health care anti-kickback statute. *See, e.g.*, *United States v. Ricard*, 922 F.3d 639, 648 (5th Cir. 2019) ("Willfulness in the Medicare kickback statute means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law." (internal quotation marks and citation omitted)); *United States v. St. John*, 625 F. App'x 661, 666 (5th Cir. 2015) (per curiam) (accepting the district court's § 1347 willfulness instruction, which stated that "willfully ... means that the act was committed voluntarily or purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law" (alteration in original)); *see also United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014) (holding that § 1347 requires "specific intent to defraud").

Based upon the evidence presented by the Government, "[t]here is no dispute that [the Defendants] worked [with Rxpress] while fraud and kickback schemes occurred, but what *is* in dispute is whether [they] knew that [their] work was unlawful." *United States v. Nora*, 988 F.3d 823, 829 (5th Cir. 2021). Put differently, the critical determination which remains is "legally, whether there was sufficient evidence introduced at trial for a rational juror to conclude beyond a reasonable doubt that [the Defendants] acted 'willfully' to defraud" TRICARE. *United States v. Nora*, 988 F.3d 823, 829 (5th Cir. 2021). Just as the Fifth Circuit found in *Nora*, the answer here is likewise that no such legally sufficient evidence exists in the case at hand:

> For example, he argues that while he may have understood that [Rxpress] was making [commission] payments for [compound cream] patients, there was no evidence at trial that proved that [the Defendants] *knew* these payments constituted unlawful kickbacks. ... We agree.

*United States v. Nora*, 988 F.3d 823, 829 (5th Cir. 2021). In this case, there is not only a lack of evidence that either Defendant knew that there was anything unlawful about Rxpress's business

model, but in fact there is affirmative evidence demonstrating just the opposite – that the Defendants believed they were acting lawfully.

In that regard, Matt Hawrylak testified to the effect of the following:

> Q: And when you were initially doing all of this back in 2014, you thought all of this was legal didn't you?
> A: What do you mean
> Q: Did you have a conversation with Ryan Wright where he told you it as legal to pay subreps?
> A: Yes
> Q: And you thought it was legal to pay subreps?
> A: Yes
> Q: And Britt had to sell Jerry on the legality of paying subreps?
> A: Yes
> Q: So Jerry thought it was legal?
> A: Yes

(Exhibit will be provided when transcript is received.).

More specifically, the only evidence presented in this case regarding Brian Carpenter's alleged involvement in any conspiracy to commit healthcare fraud is that he issued and signed prescriptions for compound creams to certain patients who were TRICARE beneficiaries—an act which is simply not, itself, unlawful. *See United States v. Mackay*, 33 F. 3d 489, 494 (5th Cir. 1994) ("[E]vidence that the companion agreed to transport the backhoe does not prove that he agreed with Mackay to transport a stolen backhoe."). And the Government has failed to present any evidence from which a rational jury could conclude that by doing so, Dr. Carpenter was somehow knowingly and willfully acting with the intent to defraud TRICARE.

For instance, Britt Hawrylak testified as follows:

> Q. So you come to me asking if I want a script. I say I have pain in my elbow; I think it will help. I go to my doctor. Doctor writes a script. You get paid a commission on that once it is filled by the pharmacy. Back in 2015, did you believe that -- that process, what I just described, that that was illegal?
> A. If the process that we are going off that is you sent it to your doctor, it was filled, I was paid a commission, I did not think that that was illegal.

Exhibit 1, at 933-934.

Additionally, Dr. Jimenez testified, in relevant part, that:

Q. Are you -- do you know what the law is in the state of Texas for establishing a doctor-patient relationship?
A. I don't know specifically that law.
Q. Would it surprise you that you don't have to meet the patient in Texas to establish a doctor-patient relationship?
...
Q. And you are saying it has to be face-to-face in Texas?
A. I didn't say that.
Q. It doesn't have to be fact-to-face in Texas, does it?
A. I don't know that specifically about Texas.
Q. That's right.  You don't know, do you  You don't know what the rules are in the state of Texas, do you?
A. Apparently I don't.
...
Q. You have an opinion that this is not the way you would have proceeded with respect to Government's Exhibit 330.  But you're not here to say that the way it was proceeded was illegal, are you?
A. I didn't say that.
Q. No, you're not saying that at all, are you?
A. I didn't say that it was illegal.  That's for somebody else to decide.
...
Q. You don't know what the rules of the podiatry profession in this state require or don't require, do you, sir?
A.  No.  There may be other witnesses for that. I'm sorry.  That's not for me to opine on.
Q. The answer is you do not know what the rules of the podiatry profession in the state of Texas are, do you?
A. I said no.  Yeah.

Exhibit 2, at 1410-1411, 1413-1414.

Likewise, despite the allegations in the Indictment, the Govenrment has proven wholly unable to offer any evidence establishing that Dr. Carpenter ever actually received any money from Jerry Hawrylak or otherwise, in connection with his signing the prescriptions at issue herein. At best, the Government has offered the vague, significantly conflicting (both as between each other, but also even across their own various statements on this issue) testimony of Matt and Britt Hawrylak that approximately $8,000 was purportedly given to Jerry Hawrylak for the purpose of

being given to Brian Carpenter at some point in 2015. [CITE]. Critically, however, the Government has offered no evidence, *whatsoever*, demonstrating that Jerry Hawrylak (even assuming that he did receive the purported $8,000 from Britt Hawrylak, which is exceedingly doubtful) ever actually gave so much as a single dollar to Brian Carpenter.

> For instance, Matt Hawrylak testified to the effect of:
>
> Q: And do you have any evidence that Dr. Carpenter was actually paid anything?
> A: I don't have any evidence of that.

(Exhibit will be provided as soon as transcript is received.)

Similarly, with respect to Jerry Hawrylak, the testimony has established that he received commission payments as a sub-rep, which he believed to be entirely lawful; akin to those that he has long earned through his role in the insurance business. But critically, *not* that he believed there was anything unlawful about said payments.

> For instance, Britt Hawrylak testified, in relevant part, as follows:
>
> Q. Now, did you have conversations with the individuals at the pharmacy about how to do this whole subrep process?
> A. I was informed on how the process worked, being a subrep or a contracted person with the pharmacy.
> Q. And did you believe this whole subrep organization or way they were doing it was legal?
> A. I had no reason to think it was illegal because I had never been in the industry before.
> Q. But no red flags to you at this point, is that right?
> A. At this point, no red flags.
> Q. And the pharmacy had told you that this was okay, they knew what you were doing?
> A. They knew what part?
> Q. About the subreps.
> A. Having subreps?  It was okay, yes.

Exhibit 1, at 911-912.

> Q. So that is the pitch that Mike Ranelle was giving in del Frisco's that night, was about an MSO, is that right?
> A. Some of the pitch, yes.

Defendants' Joint Motion for Judgement of Acquittal Pursuant to
Federal Rule of Criminal Procedure 29 | Page 9 of 12

> Q. He wanted you to bring Dr. Carpenter in to this MSO model that he was doing in Rxpress?
> A. That was part of the conversation, yes, sir.
> Q. And Dr. Carpenter refused to do that because he knew -- he didn't believe it was legal for him to get any money?
> A. I believe thats correct.

Exhibit 1, at 939.

Moreover, as the Fifth Circuit has pointed out, "even if a reasonable person in [the Defendants'] shoes should have known (or at least suspected) that [Matt and Britt Hawrylak's business model] was unlawful, that would only make [the Defendants] guilty of negligently participating in a fraud—it does not prove that [the Defendants] acted "willfully" in facilitating [the Hawrylak brothers' enterprise] [or] the fraud it furthered." *See United States v. Crow*, 504 F. App'x 285, 287 (5th Cir. 2012) (per curiam) (describing that negligence could not give rise to liability for health care fraud where the statute required the defendant act "knowingly and willfully").

In short, the Government has wholly failed to establish that either Defendant entered any unlawful agreement, knew of any unlawful purpose, or engaged in any knowing and intentional conduct whereby they willfully executed or attempted to execute any scheme to defraud TRICARE. As such, the Government has failed, as a matter of law, to meet its burden of proof and a judgment of acquittal must be entered on all counts of the Indictment, with respect to both Defendants.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully request that the instant Motion for Acquittal Pursuant to Federal Rule of Criminal Procedure 29 be, in all things, GRANTED and that the Court enter a judgment of acquittal on all counts of the Indictment, with respect to Defendants Brian Carpenter and Jerry Hawrylak.

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Poe* | */s/ Alexandra Hunt* |

**BRIAN D. POE**
Texas Bar No. 24056908
The Bryce Building
909 Throckmorton Street
Fort Worth, Texas 76102
Telephone: 817-870-2022
Facsimile: 817-977-6501
Email: bpoe@bpoelaw.com

ATTORNEY FOR JERRY HAWRLAK

**ROBERT T. JARVIS**
Texas Bar No. 10586500
123 W. Houston Street
Sherman, Texas 75090
Telephone: 903-892-8500
Facsimile: 903-892-8550
Email: bob@jarvishamilton.com

**DANIEL K. HAGOOD, P.C.**
Texas Bar No. 08698300
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
Telephone: 214-720-4040
Facsimile: 214-237-0905
Email: dhagood@hagoodhunt.com

**ALEXANDRA HUNT**
Texas Bar No. 24095711
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
Telephone: 214-720-4040
Facsimile: 214-237-0905
Email: ahunt@hagoodhunt.com

ATTORNEYS FOR BRIAN CARPENTER

# CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2024, a true and correct copy of the above and foregoing document was filed electronically with the Clerk of the U.S. District Court for the Northern District of Texas to be served upon all counsel of record by the Court's electronic filing system.

*/s/ Alexandra Hunt*
ALEXANDRA HUNT
